UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GODFREY WATSON,

       **Plaintiff,**

v.                          **Case No.:**

PINELLAS COUNTY SCHOOL
BOARD,

       **Defendant.**
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, GODFREY WATSON ("Mr. Watson"), hereby sues Defendant,

PINELLAS COUNTY SCHOOL BOARD ("Defendant"), and alleges as follows:

## JURISDICTION AND VENUE

1.    This is an action for race and sex discrimination under Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and age discrimination under

the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., seeking

compensatory and punitive damages to the extent permitted by law.

2.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

3.    This Court has personal jurisdiction over Defendant because it operates

in Pinellas County, Florida.

4.    Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §

-1-

1391(b) and 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices alleged herein occurred in Pinellas County, Florida.

5.      All conditions precedent to the institution of this action have been fulfilled, including the timely filing of a charge of discrimination with the Equal Employment Opportunity Commission and the Florida Commission on Human Relations.

## PARTIES

6.      Plaintiff is a sixty-one (61)-year-old African-American male who, at all times material, resided in Pinellas County, Florida.

7.      Defendant is an employer within the meaning of Title VII and the ADEA and, at all times material, operated in Pinellas County, Florida.

## FACTUAL ALLEGATIONS

### Plaintiff's Longstanding Employment History

8.      Mr. Watson began his employment with Defendant approximately thirty years ago.

9.      Throughout the decades, Mr. Watson held numerous positions of responsibility, eventually becoming the Administrator of Lakewood Community School ("LCS").

10.     Mr. Watson consistently satisfied or exceeded Defendant's legitimate performance expectations.

11.    Mr. Watson worked in an administrative capacity for twelve years, developing a strong reputation among faculty, administrators, and students.

12.    According to a survey by Defendant, 95% of Mr. Watson's colleagues described him as a proficient administrator.

13.    Throughout his tenure, Mr. Watson also received consistent positive annual evaluations reflecting strong performance in institutional service.

14.    Mr. Watson was repeatedly entrusted with significant institutional responsibilities, and prior to the events described herein, was never accused of dishonesty, insubordination, or professional incompetence.

15.    In all his years of employment, Mr. Watson was *never* placed on a Success Plan (a prescribed improvement plan documenting performance concerns) by Defendant.

16.    Defendant renewed Mr. Watson's employment contract repeatedly over many years based upon his strong performance and institutional value.

17.    Mr. Watson reasonably expected that his contract would continue to be renewed absent legitimate performance-related concerns.

### The Workplace Incident

18.    On the morning of April 30, 2024, an incident occurred on LCS campus near Mr. Watson's office. At the time, Mr. Watson was not on campus.

19.    The incident involved the arrest of a non-student registering for General

Educational Development (GED) at LCS. The arrest was made pursuant to an existing warrant, and it revealed that the individual was in unlawful possession of a firearm.

20.   At 10:50 a.m. that morning, Mr. Watson was informed that the individual had been arrested near his office by Adult School Coordinator, Toni Molinaro.

21.   Mr. Watson was unaware that the arrest involved a firearm.

22.   Within two hours of being notified, by 12:30 p.m., Mr. Watson arrived on campus and immediately took proactive steps to gather information such as contacting the principal of Lakewood High School and the St. Peterburg Police Department.

23.   At all relevant times, Mr. Watson acted appropriately, professionally, and consistent with LCS policy.

24.   Around 2:30 p.m. on April 30, 2024, Mr. Watson received a phone call from his direct supervisor, Mark Hunt ("Hunt"). During the call, Hunt informed Mr. Watson about what the local news was reporting about the incident, including that a firearm was involved.

25.   Mr. Watson was unaware that the arrest involved a firearm until his discussion with Hunt.

26.   At all material times, Mr. Watson cooperated with internal inquiries concerning the matter. The Office of Professional Standards (OPS) met with Mr.

Watson but confirmed that the meeting was only to hear his account of the incident, and that no investigative findings existed.

27.    The following week, on or around May 9, 2024, Mr. Watson was invited to a performance conference and evaluation by Hunt. Unbeknownst to Mr. Watson, the meeting quickly evolved into a disciplinary meeting.

28.    According to Defendant's Human Resources Protocol, a discipline meeting and evaluation are not to be conducted in the same meetings.

29.    Nonetheless, during the meeting, Hunt scolded Mr. Watson for his handling of the incident on April 30, 2024, but could not cite any specific procedure or policy Mr. Watson failed to comply with.

30.    On or around May 19, 2024, Mr. Watson received a letter from Hunt informing him that his employment contract would not be renewed. Hunt cited a negative performance evaluation, which he created, as grounds for the decision.

31.    Mr. Watson reviewed Hunt's evaluation and discovered that it was based on falsified data. Specifically, Hunt made references to OPS findings about Mr. Watson regarding the April 30, 2024, incident that were demonstrably untrue because OPS did not issue any findings about the event.

32.    When Mr. Watson confronted Hunt about the fabricated evaluation, Hunt acknowledged it was based on bad data, retracted the poor evaluation, but

remarked, "*Even though you have good data, I still don't trust you.*"

33.   Mr. Watson was not provided a meaningful opportunity to address or rebut purported concerns relating to the incident or Hunt's misconduct.

## Disparate Treatment and Pretext

34.   Upon information and belief, Hunt manufactured a poor performance evaluation and accused Mr. Watson of being distrustful solely based on prejudicial racial stereotypes.

35.   Defendant's conduct occurred against the backdrop of a workplace environment in which Black employees were subjected to greater scrutiny and less favorable treatment than similarly situated white employees.

36.   Hunt previously subjected Mr. Watson to adverse actions based on race.

37.   On one occasion, Mr. Watson was approved by Hunt's superiors to attend a conference hosted by the National Alliance of Black School Education, an organization in which Mr. Watson was serving as the President. Without explanation, Hunt reneged on his superior's approval and refused to let Mr. Watson attend.

38.   Hunt regularly tried sabotaging Mr. Watson's ability to perform his job through various means such as impracticable demands and strategic budget cuts.

39.   On June 30, 2024, Mr. Watson's employment contract by Defendant was

not renewed.

40.    Defendant offered vague explanations for the non-renewal decision, including purported performance issues.

41.    Those explanations were inconsistent with Mr. Watson's documented performance history and prior feedback from Defendant.

42.    Prior to the non-renewal decision, Defendant had never informed Mr. Watson that his leadership, professionalism, or job performance were deficient.

43.    Defendant deviated from its customary practices and procedures in evaluating Mr. Watson and in determining whether to renew his contract.

44.    Defendant's non-renewal decision resulted in Defendant's Adult Learning Centers being exclusively led by Caucasian female administrators.

45.    Defendant's stated reasons for refusing to renew Mr. Watson's contract were not the true reasons for its decision and instead served as a pretext for unlawful race discrimination.

## COUNT I - RACE DISCRIMINATION
## IN VIOLATION OF TITLE VII

46.    Plaintiff realleges paragraphs 1 through 45 of this Complaint as if fully set forth herein.

47.    Plaintiff is African American and therefore a member of a protected class under Title VII.

48.    Plaintiff was qualified for his position and performed his duties

satisfactorily and successfully for many years.

49.    Defendant subjected Plaintiff to an adverse employment action by, among other things, declining to renew his employment contract.

50.    Defendant's articulated reasons for the non-renewal decision were false, inconsistent, and pretextual.

51.    Plaintiff's race was a motivating factor in Defendant's decision not to renew his employment contract.

52.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered damages including lost wages, lost benefits, emotional distress, reputational injury, and other damages recoverable under law.

WHEREFORE, Plaintiff requests this Honorable Court to:

A.    Grant Plaintiff an award of back-pay, front-pay, compensatory damages, and attorney's fees and costs.

B.    Grant Plaintiff a trial by jury and such further relief as the Court deems just and equitable.

## COUNT II - SEX DISCRIMINATION IN VIOLATION OF TITLE VII

53.    Plaintiff realleges paragraphs 1 through 52 of this Complaint as if fully set forth herein.

54.    Plaintiff is male and therefore a member of a protected class under Title

VII based on sex.

55.    Defendant subjected Plaintiff to an adverse employment action by declining to renew his employment contract.

56.    Following that action, Defendant replaced Plaintiff with a new administrator, who is of the opposite sex from Plaintiff.

57.    Defendant's decision to replace Plaintiff with an employee of the opposite sex, together with the surrounding circumstances, supports an inference that Plaintiff's sex was a motivating factor in Defendant's decision not to renew his employment contract.

58.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered damages including lost wages, lost benefits, emotional distress, reputational injury, and other damages recoverable under law.

WHEREFORE, Plaintiff requests this Honorable Court to:

A.    Grant Plaintiff an award of back-pay, front-pay, compensatory damages, and attorney's fees and costs.

B.    Grant Plaintiff a trial by jury and such further relief as the Court deems just and equitable.

## COUNT III - AGE DISCRIMINATION
## IN VIOLATION OF THE ADEA

59.     Plaintiff realleges paragraphs 1 through 58 of this Complaint as if fully set forth herein.

60.     At all relevant times, Plaintiff was at least 40 years old and was therefore within the class protected by the ADEA.

61.     Defendant subjected Plaintiff to an adverse employment action by declining to renew his employment contract.

62.     Upon information and belief, Defendant replaced Plaintiff with a new administrator, who was substantially younger than Plaintiff.

63.     Defendant's decision to replace Plaintiff with a substantially younger person, together with the surrounding circumstances, supports an inference that Plaintiff's age was a motivating factor in Defendant's decision not to renew his employment contract.

64.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered damages including lost wages, lost benefits, emotional distress, reputational injury, and other damages recoverable under law.

        WHEREFORE, Plaintiff requests this Honorable Court to:

        A.     Grant Plaintiff an award of back-pay, front-pay, compensatory damages, and attorney's fees and costs.

B.     Grant Plaintiff a trial by jury and such further relief as the

Court deems just and equitable.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff demands trial by jury as to all claims so triable.

/s/ Craig L. Berman

_____

Craig L. Berman
Fla. Bar No. 068977
BERMAN LAW FIRM, P.A.
111 Second Avenue NE, Suite 706
St. Petersburg, FL 33701
727-550-8989
craig@bermanlawpa.com

**ATTORNEY FOR PLAINTIFF**